# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. MICHAEL A. WEINER P/K/A Michael Savage and SAVAGE PRODUCTIONS INC.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**ORIGINAL TALK RADIO NETWORK INC. D/B/A Talk Radio Network Inc.,**<br><br>**Defendant.** | Case No.: 10-CV-05785 YGR<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO CONFIRM ARBITRATION AWARD; DENYING DEFENDANT'S MOTION TO VACATE ARBITRATION AWARD; AND CONFIRMING ARBITRATION AWARD** |

This dispute arose when Defendant Original Talk Radio Network Inc., doing business as Talk Radio Network Inc. ("Talk Radio Network"), attempted to exercise a "right to match" provision in an independent contractor agreement with radio personality and Plaintiff in this action, Michael Savage. Plaintiff believed that Talk Radio Network failed to exercise its right to match properly; Defendant disagreed and sent an arbitration demand pursuant to an arbitration provision in the parties' contract. Plaintiffs Dr. Michael A. Weiner and Savage Productions Inc. (collectively "Savage" or "Plaintiffs") filed this action in federal district court seeking various declaratory judgments. The matter was stayed pending arbitration and the parties arbitrated the dispute. On September 27, 2012 the arbitration panel issued its written arbitration award terminating the parties' contract and awarding Savage over $800,000 in withheld compensation.

Savage filed a Motion to Confirm the Arbitration Award and Defendant filed a Motion to Vacate the Arbitration Award. The Court heard oral argument on January 15, 2013.

Having carefully considered the papers submitted and the argument of counsel, for the reasons set forth below, the Court **DENIES** the Motion to Vacate the Arbitration Award, **GRANTS** the Motion to Confirm the Arbitration Award and **CONFIRMS** the Arbitration Award. Unless an

arbitration award is vacated, modified, or corrected, it must be confirmed. Talk Radio Network proffers unsupported allegations of misconduct which do not satisfy any of the grounds specified in 9 U.S.C. § 10(a) for vacating an arbitration award. The standard is high and Talk Radio Network has not met its burden. Therefore, the Court **GRANTS** the application to confirm the arbitration award.

## I. BACKGROUND

Plaintiff Dr. Weiner, who is professionally known as Michael Savage, is a nationally renowned talk-radio host and star of "The Michael Savage Show," which is syndicated by Defendant Talk Radio Network. (Complaint ¶ 1.) The parties' contractual syndicator/talk show host relationship began in January 2000 and continued thereafter until at least December 2010. (*Id.* ¶ 8.) The parties entered into another agreement in 2002 ("2002 Agreement"), which was subsequently extended.

The 2002 Agreement included a "right to match" provision allowing Talk Radio Network to match any offer to Savage to serve as a radio personality elsewhere. The 2002 Agreement was set to expire December 31, 2010. Prior to December 2010, and at Talk Radio Network's encouragement, Dr. Savage sought proposals from different radio syndicators. (*Id.* ¶ 1.) In November 2010, one such competing radio syndicator, Courtside LLC ("Courtside"), made an offer for Savage's services, as reflected in a "Term Sheet" ("Courtside Term Sheet").

On November 17, 2010, pursuant to the 2002 Agreement, Savage tendered the Courtside Term Sheet to Talk Radio Network, which represented that it would exercise its right to match. By exercising the right to match, the 2002 Agreement required Talk Radio Network and Savage to continue their syndicator/talk show host relationship for a two-year term commencing January 1, 2011 under the basic terms outlined in the Courtside Term Sheet. Thereafter, the parties attempted to adopt a more formal and definitive documentation of their new agreement that would conform to the terms set forth in the Courtside Term Sheet. During this process disagreements arose—some related to what should or should not be included in the formal documentation of the Courtside Term Sheet, and some related to events and activities predating the Courtside Term Sheet. Talk Radio Network sent an Arbitration Demand to Plaintiffs seeking to have these differences resolved pursuant to the Arbitration Clause in the parties' 2002 Agreement.

### A.  INITIAL DISTRICT COURT PROCEEDINGS

Plaintiffs filed their Complaint in Federal District Court seeking declaratory judgments that Talk Radio Network failed to exercise its right to match the Courtside Term Sheet properly and that the 2002 Agreement and Arbitration Provision therein were unenforceable.  The Complaint alleges that "TRN [Talk Radio Network] purports to have exercised its right to match, pursuant to the parties' agreement, but the agreement it proposed to Dr. Savage does not match the terms of the Courtside offer.  Not only does the TRN proposal not match the Courtside proposal in terms of financial upside, but it includes anti-competitive provisions that are illegal, limits Dr. Savage's valuable negotiating rights, and imposes additional terms that are not contained in the Courtside proposal."  (Complaint ¶ 1.)

Talk Radio Network moved to compel arbitration pursuant to the 2002 Agreement.  The Arbitration Clause in the 2002 Agreement provides  "<u>Arbitration</u>:  In the event that there is a dispute, that is not covered specifically herein, regarding any and all matters relating to our business relationship, it is agreed that the dispute shall be resolved by binding arbitration."   By Orders dated March 14, 2011 and April 22, 2011, the case was sent to arbitration and the court proceedings were stayed.

### B.  ARBITRATION PROCEEDINGS

The parties arbitrated through the American Arbitration Association ("AAA").  The arbitration panel ("Panel") consisted of three members, Roy Rifkin, Richard Idell, and Robert Nau ("Arbitrator Nau").  Sandra Marshall was the case manager ("Case Manager Marshall") assigned to the parties' case.

Notwithstanding their dispute, it appears that Savage continued hosting his talk show, and Talk Radio Network continued to syndicate his show nationwide.  It also appears that during the course of the arbitration proceedings Talk Radio Network began withholding substantial amounts of Savage's compensation with the expectation that it would prevail at arbitration and be awarded damages in amounts far exceeding what it was withholding.

*1.     Interim Awards*

The Panel issued two interim awards before it issued its final award on the merits of the parties' dispute. In the first interim award, issued in September 2011, the Panel found that Section 2855 of the California Labor Code regarding limitations on personal service contracts was inapplicable and that Oregon law governed the parties' contractual relationship. In the second interim award, issued on March 21, 2012, the Panel found that Talk Radio Network effectively exercised its right to match the Courtside Term Sheet. (Mot. to Vacate, Ex. 2 ("Second Interim Award").) Even though both interim awards were decided unanimously by the Panel, Arbitrator Nau issued a dissent in the Second Interim Award, referring back to the September 2011 Award, stating the decision was wrong and that Section 2855 of the California Labor Code regarding limitations on personal service contracts is applicable to the parties' contractual relationship.

The parties then submitted the remaining matters to the Panel: "All claims, whether arising by contract, tort, or statute, in connection with any party's alleged non-performance of any and all agreements between the parties including, but not limited to, any agreement resulting from the matching of the Courtside Term Sheet."

*2.     "Threatening" emails; "ex parte" communications; and pretrial motions*

By all accounts the arbitration process was long and acrimonious. Based on the vitriolic language used by the parties in their briefs, the acrimony has continued into the award confirmation process with the district court. This subsection provides context for Talk Radio Network's attacks on the integrity of those proceedings, which is the basis for its motion to vacate.

During a May 29, 2012 telephone status conference in which the Panel and all parties participated, Arbitrator Nau suggested that the parties meet and confer on witness subpoenas and then Savage's attorney would email the Panel and opposing counsel with a list of potential witnesses to subpoena. On June 1, 2012, Savage's attorney followed up on Arbitrator Nau's instruction to email the witness list, and emailed all counsel and the Panel with the subject line "per Nau's Instruction." In its Motion to Vacate, Talk Radio Network has introduced the header and subject line of this email as circumstantial evidence that Savage's attorney had improper *ex parte* communications with a

4

member of the Panel and accuses that Panel member, Arbitrator Nau, of providing unspecified instructions to Savage. (*See* Mot. Vacate 16-17.)

The hearing on all remaining issues originally was set for July 3 through 13, 2012 but following that May 29, 2012 telephone conference the hearing was continued to August 13 through 16, 2012. (Def.'s Ex. 4.) On July 20, 2012, Savage sent an email to Case Manager Marshall complaining of the costs and delay in the resolution of the arbitration proceedings, which had begun in the spring of 2011.[1] (Mot. to Vacate, Ex. 18.)

In July 2012, the parties exchanged the documentary evidence they intended to offer at the hearing. Savage believes that "instead of exchanging numbered and labeled exhibits for the hearing, the arbitrators got such binders but plaintiff got thousands of dumped and unlabeled documents." (*See* Savage's Opp'n at 13; Horowitz Dec. ¶¶ 42 ("thousands of hearing documents, unlabeled, not described and unorganized, were dumped on plaintiff's counsel").) Savage filed a motion to exclude all of Talk Radio Network's documents as a sanction. (*See* Savage's Opp'n, Ex. 7.) A ruling on that motion was deferred until the arbitration hearing, at which time the motion was decided in Talk Radio Network's favor, as the motion was denied.

In the July 2012 document exchange, Talk Radio Network produced 20 audio recordings that Talk Radio Network had made of Savage during off air breaks in his radio show, and without Savage's knowledge or consent. (Horowitz Dec. ¶¶ 36-37.) Savage filed a motion to exclude the use of the audio recordings as illegally obtained on the basis that audio recordings made without his knowledge or consent violated California privacy law. (*See* Savage's Opp'n, Ex. 6.) Savage also accused Talk Radio Network and one of its attorneys of criminal conduct.

Savage moved for recusal of a member of the Panel who had a prior business relationship with the law firm of the attorney Savage was now accusing of criminal conduct in relation to the

---

[1] "I relied on arbitration to be less costly and quicker that [*sic*] the courts. It is now 19 months later and $800,000 later and I am tied up in this endless mess. Why? Because the arbitrators did not know my industry-radio. One of them was in direct conflict by having done prior cases with the opposition attorney. … My finances have been drained. Is this the justice AAA wants publicized? … I will take it to the public and ask my millions of listeners and readers to call and write in with their 'arbitration horror stories.'"

audio recordings. According to Savage, this "took a potential conflict (at the start of the arbitration) and made it an actual conflict as this arbitrator was being asked (by my motion), to find misconduct, criminal conduct, conduct as part of a civil conspiracy between defendant and the lawyer." (Horowitz Dec. ¶ 39.) The Panel denied Savage's motion for recusal. (Savage's Opp'n at 11.)

On July 21, 2012, Savage emailed Case Manager Marshall to complain about the volume of exhibits submitted by Talk Radio Network, which "also included the illegal recordings." (Mot. to Vacate, Ex. 19.) In the same email, Savage complained again about the costs and delays in the arbitration. (*Id*.)

On July 22, 2012, Savage sent three emails to Case Manager Marshall, the first of which demanded dismissal of Talk Radio Network's copyright infringement claims against him. (Mot. to Vacate, Ex. 20.) Approximately one-hour later, Savage sent a second email to Case Manager Marshall as a post script: "P.S. the arbitrators were wrong on the Labor Code issue …," referring to the September 2011 Interim Award in which the Panel ruled against Savage on the applicability of the California Labor Code. The third email Savage sent to Case Manager Marshall on July 22, 2012 complained that a member of the Panel whom Savage sought to recuse was biased.

The above-referenced emails that Savage sent to Case Manager Marshall were shared with opposing counsel and the Panel *prior* to the arbitration hearing. AAA management addressed Savage's emails and complaints. Talk Radio Network never complained that the emails affected the AAA, the Panel or would otherwise compromise the integrity of the arbitration proceedings. Talk Radio Network first raised these issues in the instant proceedings to vacate the award.

*3.  The Award*

A hearing on all remaining issues was held on August 13, 2012. Most of the evidence was submitted in advance of the hearing by declaration. The arbitration award stated that "[t]he declarations offered by both sides were lengthy and the evidence voluminous. However, with very few exceptions, the testimony was unpersuasive, lacking in credibility, self-serving, lacking in foundation, highly speculative, unreliable hearsay, and not the least bit probative of the elements of any claim arising under contract, tort, or statute." (Mot. Vacate, Ex. 1 at 4 ("Award").) In particular, the claims of lost ad revenue allegedly caused by Savage's offensive on-air comments were

unsupported and speculative. (*Id.*) "[T]he only claim supported by competent, credible evidence" was for withheld compensation due Savage. (*Id.*) The Panel found that the nature of the breach was material, and accordingly supported termination of the parties' agreement. (*Id*. at 5 (citing Restatement (Second) of Contracts; Oregon case law; and Witkin Summary 10th (2005) Contracts).)

On September 27, 2012, the Panel issued its decision on the substantive merits of the parties' claims, granting Savage relief on his key claims and denying all of Talk Radio Network's claims. The Panel found that Talk Radio Network had materially breached the contract when it withheld Savage's compensation and that this breach allowed Savage to terminate the parties' contract. The Panel ordered Talk Radio Network to pay Savage $862,454.92 plus money owed from January 1, 2012 through September 27, 2012 and terminated all agreements between the parties.

The Panel's Award was as follows:

> 1.  Respondent OTR [Talk Radio Network] shall pay to Claimants Weiner and SPI the sum of $745,543.80, plus interest thereon at the rate of 9% per annum from February 29, 2012, to the date of this Award in the amount of $38,788.70.
>
> 2.  Within 60 days of the date of this Award, OTR shall pay to Claimants any and all compensation due and owing under the formula set forth in paragraph 3 of the Courtside Term Sheet for the period of January 1, 2012, to the date of this Award.
>
> 3.  Within 60 days of the date of this Award, Respondent OTR shall deliver to Claimants all archived tapes and other "recordings" of "The Michael Savage Show" as that term is defined in paragraph 14 of the Host Agreement.
>
> 4.  Except as otherwise set forth in this Award, any and all agreements between the parties (including, but not limited to, the Host Agreement, as extended, and any agreement based upon the matched Courtside Term Sheet) and any future obligations arising thereunder are hereby terminated.
>
> 5.  The administrative filing and case service fees of the AAA, totaling $33,500.00, shall be borne as follows: entirely by The Original Talk Radio Network, Inc.. (*sic*)  The other administrative fees of the AAA, totaling $600.00, shall be borne as follows:  entirely by The Original Talk Radio Network, Inc.. [*sic*]  The fees and expenses of the arbitrator(s), totaling $129,244.78, shall be borne as follows:  entirely by The Original Talk Radio Network, Inc.. [*sic*]
>
> Therefore, The Original Talk Radio Network, Inc. shall reimburse Claimants an additional sum of $79,122.42, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimants.  Otherwise, the parties shall bear their own attorney's fees and costs.

(Award at 5.) AAA also returned over one-third of the arbitration deposit.

Savage filed a motion to confirm the Award. Defendant then filed its motion to vacate the Award. Talk Radio Network asserts that the Award is entirely irrational and only could have been procured by the threats and intimidation contained in emails that Savage sent to the Panel and the entire AAA.[2]

## II.     LEGAL STANDARD

The role of the courts in reviewing arbitration awards is extremely circumscribed. *Southern California Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1208 n. 8 (9th Cir. 1989) (*en banc*)). The confirmation of an arbitration award is meant to be a summary proceeding. *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). Section 9 of the Federal Arbitration Act ("FAA") provides that when presented with an application to confirm an arbitration award, the district court "must grant an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award.'" *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Kyocera*, *supra*, 341 F.3d at 994). Rather, grounds for vacating an award are limited to those specified by statute. *Hall St. Associates*, *supra*, 552 U.S. at 584 (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award).

The FAA authorizes courts to vacate an award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[2] Talk Radio Network also submits some of the evidence it offered in the arbitration proceeding, including declarations of its employees chronicling allegedly abusive conduct by Savage. Although it purports to offer this evidence to demonstrate that the Panel was corrupted, unduly influenced and issued an irrational Award, Talk Radio Network impermissibly seeks judicial review of the sufficiency of the evidence. Judicial review of arbitration awards under the FAA does not include evidentiary appeals. *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) ("Any other reading [of the FAA] opens the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process'") (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003))). Accordingly, the Court does not take a position on this issue.

8

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## III. DISCUSSION

Talk Radio Network argues that all four grounds for vacatur are present here. It argues that "Savage's threats and intimidation against the AAA establishes the context and motivation for what is otherwise an entirely irrational Final Award." (TRN's Reply at 2.) First, it claims that Savage threatened and intimidated the Panel and corrupted the arbitration process itself, thereby procuring an award favorable to Savage by fraud and undue means. As to the second grounds for vacatur, Savage argues that, as a result of Savage's threats, the AAA pressured the Panel to decide the case in Savage's favor, then the Panel "bowed to pressure from the AAA" and therefore, the Panel lacked impartiality. As to the third ground for vacatur, Talk Radio Network argues that the Panel is guilty of misconduct for failing to provide a reasoned consideration of the "overwhelming evidence" Talk Radio Network submitted to establish its claims. Finally, as to the fourth ground for vacatur, Talk Radio argues that the Panel exceeded their powers by when it awarded Savage money damages and released Savage from the parties' contract. As set forth below, Talk Radio Network has provided no evidentiary support for its claims of corruption, fraud, undue influence, or misconduct, or any reason to conclude that discovery will uncover such evidence.[3]

### A. CORRUPTION, FRAUD, OR UNDUE MEANS.

The first ground on which to vacate an arbitration award is where the award was procured by corruption, fraud, or undue means. 9 U.S.C. § 10(a)(1).

In order to justify vacating an arbitration award on the basis of fraud, the objecting party must show by ***clear and convincing evidence*** that the fraud was (1) not discoverable by due diligence before or during the proceeding, and (2) materially related to the submitted issue. *A.G. Edwards &*

---

[3] The parties filed a joint letter brief where Talk Radio Network asks for leave to conduct this discovery so that it may support its allegations of misconduct with evidence.

9

1   *Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992), *cert. denied*, 506 U.S. 1050 (1993)
2   (citing *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339
3   (9th Cir. 1986)).  An appearance of impropriety is not sufficient to establish fraud or bias under the
4   FAA.  *Arizona Elec. Power Co-op v. Berkeley*, 59 F.3d 988, 993 (9th Cir. 1995); *Pac. & Arctic Ry. &*
5   *Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991) (citing *Toyota of Berkeley v.*
6   *Automobile Salesmen's Union*, 834 F.2d 751, 755 (9th Cir. 1987), *cert. denied*, 486 U.S. 1043
7   (1988)).

"Undue means" "connotes behavior that is immoral if not illegal … something wrong, according to the standards of morals which the law enforces."  *A.G. Edwards & Sons*, *supra*, 967 F.2d at 1403.  To vacate an award on the grounds of "undue means" the proponent must show that the "undue means" was not discoverable before the award was made and that it caused the award to be given.  *Id*. at 1404.  Courts will vacate an award only where the objecting party has demonstrated that the misconduct actually prejudiced the party's rights.

Here, the "evidence" proffered falls far short of the required clear and convincing standard necessary to vacate an arbitration award procured on the ground of fraud or undue means.  Talk Radio Network argues that Savage's threatening "*ex parte* communications, which materially related to issues in the arbitration, are clear and convincing evidence of 'fraud' and 'undue means.'"  (Mot. Vacate 17.)  It argues that, "[a]s Savage recognized, the AAA is particularly susceptible to bad publicity" and accuses the AAA of pressuring the Panel to rule in Savage's favor "to avoid the public relations disaster that was being threatened by such a popular radio celebrity."  (TRN Reply at 3.)  On this basis, Talk Radio Network asserts that the Award was procured by "corruption, fraud, or undue means," and must be vacated.

The proffer fails because the evidence on which Talk Radio Network relies not only was known to Talk Radio Network in advance of the arbitration hearing, but the parties and the Panel discussed the emails that Savage sent to Case Manager Marshall.  Talk Radio Network never moved for recusal of any member of the Panel, Case Manager Marshall, or the AAA.  Having received a adverse ruling, Talk Radio Network now argues that it "could not possibly assess the effect and prejudice of the *ex parte* communications until the Final Award was issued" and speculates that the

10

AAA pressured the Panel to rule in Savage's favor. (TRN Reply at 3 ("The *ex parte* communications give rise to a reasonable inference that the Panel bowed to pressure from the AAA.").)

Talk Radio Network has no actual *evidence* that Savage's emails impacted the Award. As Savage notes, the subject matter of the allegedly "threatening" emails was the subject of pretrial motions, and all of the pretrial motions were decided against him, and in favor of Talk Radio Network. Thus, Savage argues, why would an "intimidated," "corrupted," and "unduly influenced" Panel fail to grant Savage the relief requested in these pretrial motions? Talk Radio Network responded with silence.

This basis for vacatur must be **DENIED**. Bald accusations that the AAA dictated the outcome by exerting pressure on an arbitration panel is not "clear and convincing" evidence that Savage's emails to Case Manager Marshall, which were shared with opposing counsel prior to the final arbitration hearing, influenced the Panel to rule in Savage's favor (or influenced the AAA to pressure the Panel to rule in Savage's favor).

**B. IMPARTIALITY.**

The second ground for vacatur requires proof of partiality by the arbitrator. 9 U.S.C. § 10(a)(2).

Evident partiality has been found in cases of actual bias or in cases where undisclosed information gives a reasonable impression of partiality. *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). Actual bias need not be shown "where the arbitrator's failure to disclose information gives the impression of bias in favor of one party." *Id*. In an actual bias case, "the party alleging evident partiality must establish specific facts which indicate improper motives." *Id.* (quoting *Sheet Metal Workers Int'l Ass'n v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)).

Talk Radio Network again argues "[t]he *ex parte* communications and the nature of the final award in the context of the entire proceeding create a reasonable impression of bias on the part of the Panel." (Mot. Vacate 17.) Although Talk Radio Network characterizes its claim as a reasonable impression of bias and not actual bias, its "objection is not directed at any nondisclosure of relevant information and is essentially an attack on the integrity of the arbitration award. Therefore, the legal

11

standard for determining actual bias is applicable to [Talk Radio Network]'s claim of partiality." *Woods*, *supra*, 78 F.3d at 428.

Talk Radio Network accuses Savage's counsel and Arbitrator Nau of improper dealings: "Savage and his counsel had instruction from Arbitrator Nau, who changed his opinion on the California Labor Code issue between the Panel's September 9, 2011 order and the Interim Award."[4] (Mot. Vacate 17.) This accusation of misconduct is based solely upon the subject line of an email ("per Nau's instructions"), which Savage's counsel has explained was sent to the Panel and opposing counsel as a follow-up to a telephone status conference at which every party was represented. There is nothing untoward about this email and it certainly is not proof of *ex parte* communications as Talk Radio Network argues.

Talk Radio Network also argues that "if an arbitrator's personal stake in the outcome is outrageous," it must be vacated. (Mot. Vacate 17.) According to Talk Radio Network, Savage "threatened to swamp the AAA with bad publicity if he did not get the result that he wanted."[5] (TRN Reply 2-3.) This implies that the Panel—and the AAA whom Talk Radio Network accuses of influencing the Panel—took these threats of bad publicity so seriously that they had a personal financial stake in the outcome of the arbitration that is "outrageous." As "proof" of the Panel's evident partiality, Talk Radio Network points to the "cursory and dismissive nature of the Final Award." Arguing that an arbitration award is "cursory" or "dismissive" does not justify federal court review of that arbitration award. "Arbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).

---

[4] Arbitrator Nau initially agreed with the other two members of the Panel and ruled that Oregon law controlled but later changed his mind and in the March 2012 Interim Award wrote a dissenting opinion to argue that the Panel should have ruled that the California Labor Code applied to the parties' dispute. Talk Radio Network suggests that this change in opinion was the result of improper means.

[5] This suggests that Savage demanded a final arbitration award in his favor; however, the "threatening emails" complained about (1) costs and delays in the arbitration process, (2) arbitrator *bias against* Savage, and (3) Talk Radio Network's voluminous and unorganized exchange of document. Savage also demanded that the copyright claim against him be dismissed. While the Panel ruled against Talk Radio Network on the copyright issue, Savage did not get the result he wanted on the other issues.

Such "threatening" communications do not show evident partiality or create a "reasonable impression of bias."

The cases on which Talk Radio Network relies are instructive as to the extent of partiality required to justify vacatur of an arbitration award and why vacatur is not appropriate here. In *Woods v. Saturn Distribution Corp.*, *supra* 78 F.3d 424, the Ninth Circuit upheld an arbitration award where the arbitration panel consisted entirely of employees and authorized dealers of Saturn. Like Talk Radio Network here, in *Woods*, *supra*, the party challenging the arbitration award was aware of the facts which it argued gave rise to an impression of partiality. The Ninth Circuit rejected Mr. Woods' assertion that the arbitrators' jobs would be jeopardized if they decided against Saturn because he presented no evidence that the arbitrators were predisposed to rule in favor of Saturn. Like Mr. Woods, Talk Radio Network argues the Panel was partial based on the assertion that the arbitrators' jobs would be jeopardized if they decided against Savage, and like Mr. Woods, Talk Radio Network also has presented no evidence to support this assertion.

The other case Talk Radio Network cites, *Pitta v. Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 420 (2d Cir. 1986), is distinguishable. There, an arbitration award was vacated because the arbitrator's *actual* stake in the outcome created the risk of unfairness. In *Pitta*, an arbitrator was called upon to determine the validity of his own dismissal. The issue was "whether an arbitrator may resolve a grievance that requires him to interpret his own contract of employment to decide if he has been validly dismissed." The Second Circuit analogized the situation to a case in which an arbitrator's father was the vice-president of a party to a dispute, but found that in *Pitta*, "[a]n even stronger risk of unfairness exists here where the arbitrator, acting alone, determines the validity of his own dismissal from a lucrative position." *Id.* at 424 ("The relationship between a party and the arbitrator may, in some circumstances, create a risk of unfairness so inconsistent with basic principles of justice that the arbitration award must be automatically vacated."). Here, the Panel (and the AAA) do not have a direct stake in the outcome of the arbitration like the relationship in *Pitta*; instead, the

1  arbitrators' stake in the outcome of the arbitration, and the stake of the AAA, is more attenuated, and,
2  as in *Woods*, the assertion of bias and partiality is not supported by evidence.[6]

3  Talk Radio Network has not provided sufficient evidence to show evident partiality whether
4  by proof of actual bias or, if analyzed by the more lenient standard, by showing a reasonable
5  impression of bias.  Therefore, this basis for vacatur also must be **DENIED**.

6  **C.   MISCONDUCT OR MISBEHAVIOR.**

7  The third ground for vacatur requires proof that the arbitrators refused to hear evidence
8  pertinent and material to the controversy, or were guilty "of any other misbehavior by which the
9  rights of any party have been prejudiced."

10  *1.   Failure to <u>consider</u> evidence that the Panel heard is not a basis for vacatur*

11  Talk Radio Network does not argue that the Panel refused to hear evidence; instead, it
12  speculates that the Panel, although having heard the evidence, failed to consider the evidence.  This is
13  not a basis for vacatur.  Quite possibly realizing that it cannot challenge the Panel's findings of fact
14  directly, Talk Radio Network speculates that the Panel must not have considered all the evidence
15  submitted.  Talk Radio Network speculates that the AAA's return of over one-third of the arbitration
16  deposit together with the absence of a lengthy discussion of the evidence submitted in the Award can
17  lead to only one possible conclusion, that the arbitrators must not have considered the evidence that
18  was submitted.  This is not proof that the panel did not consider the evidence.[7]

19  Vacatur under this prong requires proof that the arbitrators were guilty of misconduct in
20  refusing to hear relevant material evidence.  Talk Radio Network presented its evidence; the
21  misconduct alleged is the failure to provide a reasoned basis for their decision.  "Arbitrators have no

---

[6] *See, also Toyota of Berkeley*, *supra*, 834 F.2d at 757 (holding there is not "automatic bias when one of the parties chooses to file suit against the arbitrator in his or her professional capacity"); *see also Schmitz v. Zilveti*, 20 F.3d 1043, 1044 (9th Cir. 1994) (vacating award for evident partiality where the arbitrator's law firm had represented the parent company of a party "in at least nineteen cases during a period of 35 years[,] the most recent representation end[ing] approximately 21 months before [the] arbitration was submitted.").

[7] Savage offers a simpler explanation for the Panel's decision:  "the arbitrators found a failure of proof by defendant and a clear (and admitted) material breach."  (Savage's Opp'n at 7.)

14

obligation to the court to give their reasons for an award." *Enter. Wheel & Car Corp.*, *supra*, 363 U.S. at 598. Therefore, this basis for vacatur fails.

### 2. Other "misbehavior"

Talk Radio Network also argues that the Panel is guilty of misbehavior because the Panel considered issues outside of the scope of the pleadings and awarded a remedy not available under the parties' 2002 Agreement. It argues this lack of notice and an opportunity to be heard violated its right to due process. Talk Radio Network argues that Savage was not entitled to an award of termination of the contract and recoupment of money withheld because neither issue was submitted to arbitration. The record shows otherwise: both issues were submitted to arbitration.

Savage sought termination of the agreement[8] and an accounting to recoup the money earned and withheld by Talk Radio Network.[9] (*See* Def.'s Ex. 34.) The parties agreed to arbitrate: "All claims, whether arising by contract, tort, or statute, in connection with any party's alleged non-performance of any and all agreements between the parties including, but not limited to, any agreement resulting from the matching of the Courtside Term Sheet." Accordingly, Talk Radio Network was on notice that it would need to litigate both the issue of whether Savage was entitled to terminate the Agreement and the issue of whether Savage was entitled to withheld pay.

As to its second ground for Panel misconduct, Talk Radio Network argues that the parties' 2002 Agreement did not allow for termination as a remedy, and therefore, the Panel exceeded their authority when it ordered termination of the parties' employment agreement. The Arbitration Clause states that: "Termination shall not be a remedy for any ambiguity in this Agreement, or in any forum, including without limitation arbitration or any arbitration ruling." Although not raised by the parties,

---

[8] Savage's Second Cause of Action sought a declaration that the contract was terminable at will and Savage's First, Third and Fourth Causes of Action also sought declarations terminating the parties' contract as void, illegal, unenforceable, and expired. It is therefore, incorrect to argue that these issues were outside the scope of the pleadings or that Talk Radio Network was not afforded an opportunity to be heard on these issues.

[9] The claim of breach of contract for withholding money due under the contract was asserted in Savage's Amended Demand for Arbitration as was the claim that Talk Radio Network was unjustly enriched by such withholding. The money awarded to Savage was based on withholding by Talk Radio Network done after the parties filed their claims and cross-claims.

the Award reflects that the Panel held that Talk Radio Network effectively matched the Courtside Term Sheet, thereby establishing a new contract between Savage and Talk Radio Network "under the basic terms outlined in the Courtside Term Sheet." (Award at 3.) The Courtside Term Sheet did not contain a limitation of remedies provision. Thus, in light of the parties' acts and conduct, the Panel could have found that the 2002 Agreement which provides that "[t]ermination shall not be a remedy …" had expired by its own terms on December 31, 2010 or that the Courtside Term Sheet became the parties' new contract. Either way, the 2002 Agreement was no longer the operative employment contract and the Panel could not have exceeded their authority by terminating an agreement that was no longer in effect.

This basis for vacatur also must be **DENIED**.

### D. SCOPE OF POWERS.

The final ground for vacatur of an arbitration award is "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Arbitrators exceed their powers if an arbitration award constitutes a "manifest disregard for the law" or is "completely irrational." *Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). Neither occurred in this case.

#### 1. Manifest Disregard

"'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators [1] recognized the applicable law and then [2] ignored it." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (internal quotations omitted). "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same.'" *Bosack*, *supra* 586 F.3d at 1104 (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)) (alterations in original). No such evidence of this two-step manifest disregard of the law is proffered here.

Talk Radio Network merely argues that (i) the applicable law "was expressly called to the attention of the Panel," and then (ii) the Panel incorrectly applied the law to the facts. Talk Radio Network never asserts that the Panel understood or correctly stated the law and then chose to *ignore*

16

it. Failure on the part of the Panel to either understand or correctly apply the law does not constitute a "manifest disregard of the law" as would be required to vacate an arbitration award. *Bosack*, *supra*, 586 F.3d at 1104 ("manifest disregard … requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'") (quoting *Collins*, *supra*, 505 F.3d at 879). "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award.'" *Id*. at 1102 (quoting *Kyocera*, *supra*, 341 F.3d at 994). Merely attempting to reframe the issue as "manifest disregard" of the law does not justify federal court review of an arbitration award denying a claim or defense.

### 2. *Irrational*

An award is completely irrational if it *fails* to draw its essence from the agreement. *Comedy Club*, *supra*, 553 F.3d at 1288. "An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (quoting *Bosack*, *supra*, 586 F.3d at 1106.) This standard is satisfied if the arbitrator is arguably interpreting the contract and that interpretation is "plausible." *See id.* at 643; *Sheet Metal Workers Int'l Ass'n v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) ("as long as the arbitrator[s are] even arguably construing or applying the contract and acting within the scope of [their] authority, that a court is convinced that [they] committed a serious error does not suffice to overturn [their] decision").

Here, Talk Radio Network argues that the award is irrational because it terminates the parties' contract based on Talk Radio Network's withholding payment for two reasons: (1) the issue of termination was not submitted to arbitration; and (2) the parties' contract expressly stated that termination was not a remedy for breach. These are the same arguments that Talk Radio Network made in its assertion of arbitrator misbehavior in Part III.C.2, *supra*. Whether Talk Radio Network's argument is analyzed as misbehavior or exceeding their powers by issuing an irrational award, Talk Radio Network's argument is without merit. The arbitrators were arguably interpreting the parties' agreement in light of the parties' acts and conduct, and the interpretation is plausible. Therefore, the arbitrators acted within their powers.

This basis for vacatur also must be **DENIED**.

## IV. CONCLUSION

The FAA requires that the Court grant an application to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. For the reasons set forth above, the Motion to Vacate is **DENIED**. Therefore, the Motion to Confirm must be **GRANTED**. The Arbitration Award is **CONFIRMED**.

The Court will issue a judgment by separate Order. Plaintiff shall file a proposed form of judgment by no later than 14 days after the date of this Order accompanied by an appropriate declaration regarding the calculation of interest due and the daily rate of accrual.

This terminates Docket Nos. 30, 44 & 56.

**IT IS SO ORDERED**.

**Date: May 2, 2013**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**