1    DANIEL HOROWITZ CSBN No. 92400
     Law Offices of Daniel Horowitz
2    P.O. Box 1547
     Lafayette, California 94549
3
     (925) 283-1863
4    E-mail: Horowitz@WhiteCollar.US

5
     Attorney for Dr. Weiner, et al.
6    Plaintiffs

7

8              *UNITED STATES DISTRICT COURT*

9
               *NORTHERN DISTRICT OF CALIFORNIA*
10

11   DR. MICHAEL A. WEINER,
     et al.,
12                                              Case No. C 10-5785 YGR
                   Plaintiffs,
13
     vs.
14
     ORIGINAL TALK RADIO NETWORK
15   et al.,

16                 Defendants.
     _____/
17

18                          **JUDGMENT**

19          The arbitration award before the American Arbitration Association dated September 27,

20   2012 in the matter captioned, THE ORIGINAL TALK RADIO NETWORK, INC., an Oregon

21   corporation, vs. MICHAEL WEINER, PhD., and SAVAGE PRODUCTIONS, INC., a Nevada

22   corporation, DR. MICHAEL WEINER and SAVAGE PRODUCTIONS, INC., a Nevada

23   corporation vs. THE ORIGINAL TALK RADIO NETWORK, INC., an Oregon corporation,

24   AAA Case No. 74140 Y 0025411 S 1 M is confirmed.

25          Judgment shall be entered as follows:

26
            1. Original Talk Radio Network Inc. a corporation, and Talk Radio Network Inc., shall
27
     pay to Michael Weiner and Savage Productions, Inc. he sum of $ 824,666.22 plus interest at 9%
28

per annum per Oregon law, from February 29, 2012 to the date of this Judgment in the sum of $ 74,087.51 for a total monetary judgment of $ $ 898,753.73. This judgment shall accrue interest at the rate of 9% per annum on any and all amounts unpaid until collected.

2. Within 60 days of this Judgment, Original Talk Radio Network Inc. a corporation, individually and doing business as Talk Radio Network Inc.,  shall pay to Michael Weiner and Savage Productions, Inc. any and all compensation due and owing under the formula set forth in paragraph 3 of the Courtside Term Sheet for the period of January 1, 2012, to the date of this Judgment.  This amount shall accrue interest at the rate of 9% per annum, simple interest, from February 29, 2012, to the date of this judgment with interest accruing on the judgment amount at 9% per annum on any unpaid balance until collected.   A copy of Paragraph 3 of the Courtside Term Sheet is attached and incorporated in this Judgment as Exhibit A.

3. Within 60 days of the date of this Judgment, The Original Talk Radio Network, Inc. Individually and dba Talk Radio Network Inc.,  shall pay to Michael Weiner and Savage Productions, Inc. all archived tapes and other "recordings" of "The Michael Savage Show" as that term is defined in paragraph 14 of the Host Agreement.   A copy of paragraph 14 of the Host Agreement is attached and incorporated in this Judgment as Exhibit B.

4. Except as otherwise set forth in this Judgment, any and all agreements between the parties (including, but not limited to, the Host Agreement, as extended, and any agreement based upon the matched Courtside Term Sheet) and any future obligations arising thereunder are hereby terminated.

5.  This Judgment is in full settlement of all claims between the parties submitted in the Arbitration titled THE ORIGINAL TALK RADIO NETWORK, INC., an Oregon corporation, vs. MICHAEL WEINER, PhD., and SAVAGE PRODUCTIONS, INC., a Nevada corporation, DR. MICHAEL WEINER and SAVAGE PRODUCTIONS, INC., a Nevada corporation vs. THE ORIGINAL TALK RADIO NETWORK, INC., an Oregon corporation, AAA Case No. 74140 Y 0025411 S 1 M.  All claims not expressly granted herein are denied.

Dated:

1
2

_____
Honorable Yvonne Gonzalez Rogers
Judge of the United States District Court

3   Approved as to Form:

4

5

_____
John Shoreman
Attorney for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Courtside to create and maintain an exclusive internet site for the Show, for streaming the Show, and for related promotional activities. The Show internet site will be separate and apart from SP and Michael's site(s), and Michael will plug the Show website twice daily during the Show; Courtside may provide links to SP and/or Michael's website(s), for the Show website. Courtside, and/or Westwood One, and SP will install and maintain such links throughout the Term.  Michael and/or SP will retain exclusive control and enjoyment over their website(s), as their exclusive property.

2.    Michael's Services.
SP to provide Michael's services as reasonably necessary to produce and deliver Show, including reading commercial copy for program advertisers; Michael will not be required to travel or make personal appearances. Michael will not be required to read more than two ads per day on air, and he may refuse ads which make health/wellness/nutritional claims which he doesn't feel are appropriate. Michael will be free to cross-promote his books, separate website and other works and promotions, at his discretion, in the Show.

SP to grant of use of Michael's name and likeness for promotion, and to provide approved publicity materials for use in promotion of the Show.

Michael's services will be exclusive to Courtside during the Term as respects radio activities in any way whatsoever competitive with the Show, and as respects any and all visual media activities for any similarly formatted program

Michael to host the Show, except that he will be permitted thirty-five (35) days vacation, and reasonable sick leave. Michael will have approval rights for any guest hosts selected to host the Show in his absence.

3.    Compensation to SP.
Courtside will pay SP, semi-annually in arrears, no later than sixty (60) days after the end of every semi-annual period during and after the term, a sum equal to fifty percent (50%) of Courtside's "Adjusted Gross Receipts" in the prior semi-annual period from exploitation of the Show, less all advances by then paid to SP and not as yet then recouped from SP's participation in Adjusted Gross Receipts

"Adjusted Gross Receipts" to mean all Gross Receipts actually received from exploitation of the Show, less only radio station clearance fees paid or allowed by Courtside and approved by SP

Gross Receipts shall include all receipts from exploitation of the Show, inclusive of receipts of any of Courtside's distributors (i.e., Westwood One, RightNetwork, etc). For purposes of clarity, all commissions paid from syndication or sales side advertising bought on the Show shall not be charged to or deducted from Gross Receipts or Adjusted Gross Receipts, but shall be borne by Courtside out of its share of Adjusted Gross Receipts

Courtside shall pay SP, for the first year of the Term hereof, the sum of One Million One Hundred Thousand Dollars ($1,100,000), and, for the second year of the Term hereof, the sum of One Million Three Hundred Thousand Dollars ($1,300,000), each payable bi-monthly in arrears, as a guaranteed non-refundable advance, fully recoupable against SP's share of Adjusted Gross Receipts. Courtside will escrow One Million One Hundred Thousand Dollars ($1,100,000), the entire Advance payable for the first year, and funds will be released form escrow monthly in arrears, as due, to pay the Advance

4.   <u>Courtside Commitments</u>.
Radio station affiliation and advertising sales services will initially be provided by Westwood One pursuant to a separate distribution agreement.

Courtside to provide video and internet distribution through RightNetwork or other distributors of Courtside's selection, and other media distribution to be determined by Courtside

Courtside to provide, through Westwood One, weekly promotions of the Show and Michael, in the minimum amount of Five Hundred Thousand Dollars ($500,000) annually (calculated at then prevailing commercial rates), including commercial spots and live promotional spots and announcements in Westwood One programming inventory, including but not limited to NFL Football, NCAA Basketball, Metro Traffic, CNN News, NBC News, CBS News, Westwood One Talk Radio, Westwood One Talk Programming, and appropriate entertainment programming, and News, Sport & Entertainment Specials

Courtside to secure a non-exclusive agreement between Courtside and Right On Demand, LLC, dba RightNetwork (RightNetwork"), for a term of one year, renewable by mutual agreement for one additional year, to

1

**EXHIBIT A**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**EXHIBIT B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

directly to Network unless Host and Network mutually agree otherwise. All costs for maintenance, repair and/or replacement of broadcast equipment will be borne by Network.

13. <u>Personal Interests</u>. Host shall have the right, subject only to any applicable FCC requirements, as any such requirements may change over time, to mention any book Host has written, or will write, The Paul Revere Society and/or Host's website on the Show.

14. <u>Separate Rights</u>.

    14.a.  <u>Host's Rights</u>. Host grants Network rights only to syndicated national radio and such other rights as are expressly specified in this Agreement, reserving all other rights. Host shall have the sole rights to anything unrelated to his exclusive obligation to Network as a host in national talk radio syndication or as to the televising or the Show as provided for in Paragraph 21 of this Agreement or otherwise expressly granted to Network by Host under this Agreement. Host shall also have sole rights to any other products Host produces that do not constitute the following memorabilia of the Show: printed tee-shirts; coffee mugs; and audiotapes or CD sets of the Show (collectively, "Program-Related Products".) Notwithstanding any other provisions set forth herein, Network shall not acquire any interest in Host's products, writings, or any television ventures outside of the times required for Host to host the Show for Network. Once Network has discontinued the syndication of the Show following the New Expiration Date, Network shall transfer possession and ownership of all archived tapes of the Show then in Network's possession for all segments in which Host hosted the Show, from the first date Host began hosting the Show for Network through the New Expiration Date.

    14.b.  <u>Network's Rights</u>. All Programs and recordings of Host's performances for Network, and all rights therein, shall be the sole and absolute property of Network. All rights in and to the format of Network and all program titles and pseudonyms used by Host in the course of performing Host's services shall be the sole and absolute property of Network, except for Host's name and any pseudonyms Host has regularly and continually used prior to Host's retention by Network such as "The Savage Nation". To the extent, if any, that Host retains any right, title or interest in or to any of the results of Host's services in national radio syndication, Host shall assign all of such right, title and interest to Network during the Term of this Agreement. Network shall have the broadest possible right to cut, edit, change, add to or subtract from any recordings or other materials which include the results of Host's services, and to combine one Savage Program with other Savage Programs, and Host hereby waives all so-called "author's rights" and rights of "droit moral." Network may exploit and turn to account any and all such rights granted to it and the Programs and recordings of Host's performances, in any manner and by any means whatsoever, now or hereafter known or devised, including, not limited to, by broadcast and rebroadcast over Network and/or any other company, whether on a sustaining or commercial sponsored basis. For the purpose of this Agreement, the terms "recording" and "recordings" include any recording or recordings made (whether before, during or after broadcast transmission), by tape, digital medium, film, disc or any other similar or dissimilar methods of recording audio and/or visual

Initials: _MM_  _MAW_      15 of 20

MM      MAW

WASHINGTON 75850v2

SAV00015



portions of Programs, whether now or hereafter known or devised. Upon termination of this Agreement Host shall have the right to all "recordings" as defined in the preceding sentence, as his absolute property.

14.c.   [Intentionally deleted]

14.d.   <u>Name and Likeness</u>. Network, the sponsors of the Program, if any, and their advertising agencies, if any, shall have the right, and may grant to others the right, to use Host's name, pseudonyms, likeness, voice and biographical material for advertising, publicity and promoting for the Program and in connection with the business of Network and the exercise of any rights granted Network in this Agreement, including, but not limited to, subsidiary rights in Programs; provided that Host's name or likeness shall not be used as an endorsement of any product or service without Host's prior written consent. The rights set forth in this paragraph shall continue during the Term of this Agreement (and all extensions thereof), and in connection with Programs and recordings of Host's performances, for as long a period as Network has any rights to use such Programs and recordings.

15. <u>Sales Through The Paul Revere Society</u>. Host shall further have the right to sell audiotapes or CD sets of the Show, and/or audiotapes or CD sets consisting of segments of various different broadcasts of the Show (e.g., "highlight" or "Best of Savage" tapes), through the Paul Revere Society, upon Host's payment of a royalty of Five Dollars ($5.00) to Network for each audiotape or CD set consisting of three hours or less of portions of the Show (and such royalties shall not be subject to the revenue splits specified in Paragraph 3.b.2 above).

16. <u>Correspondence</u>. All correspondence to Host from Network shall be addressed to: "Michael A. Weiner, Ph.D.". Absent Host's specific request or a legitimate and currently unforeseen emergency, Network will not send any business correspondence to Host via telephone, fax or email on vacation days, weekends, or days on which Host is not doing the Show due to illness, and shall not send any such correspondence to Host after twelve o'clock noon on Friday. Network shall never again cause any legal correspondence to be directed to Host or Host's attorney by Ronald H. Severaid.

17. <u>Substitute Hosts</u>. Network will use its best efforts to consult with Host as to the substitute hosts to be used when Host is unavailable, due to vacation or illness, to do the Show live, and to use substitute hosts acceptable to Host. However, Network's commitment in this regard shall be subject to Network's ultimate right and necessity to arrange substitute hosts without such advance consultations in emergency cases or situations in which substitute hosts discussed with Host cancel, or are unavailable or unwilling to do the Show at particular times, and there is inadequate time to procure another substitute after advance consultations with Host, for any reason. This may include, without limitation, any need to procure substitutes during periods in which Network has agreed not to send business correspondence to Host pursuant to Paragraph 16 above.

18. <u>Key Man Insurance</u>. Network, at its sole option and expense, may procure key-man life insurance on Host, to the extent that any such insurance is available on terms acceptable to

Initials: _____   _____   16 of 20
MM   MAW

SAV00016